RCVD ML
JUL 11 2008

```
 1  UNITED STATES DISTRICT COURT           FILED
    EASTERN DISTRICT OF NEW YORK        IN CLERK'S OFFICE
 2  ------------------------------x   U.S. DISTRICT COURT E.D.N.Y.
    UNITED STATES OF AMERICA,            ★ JUL 11 2008 ★
 3                                             MC
                    04 cr 706           BROOKLYN OFFICE
 4
 5        versus           United States Courthouse
                           225 Cadman Plaza East
 6                         Brooklyn, N.Y.  11201
    ABUBAKR RAHEEM,
 7
           DEFENDANT.
 8
    ------------------------------x
 9
                                      June 10th, 2008
10                                    9:30 a. m.
            TRANSCRIPT OF JURY SELECTION
11  Before: HON. MAGISTRATE JUDGE VIKTOR V. POHORELSKY,
                 UNITED STATES DISTRICT COURT JUDGE
12
13
14
15                      APPEARANCES
16
    BENTON J. CAMPBELL
17  United States Attorney - Eastern District of New York
    271 Cadman Plaza East
18  Brooklyn, New York  11201
         STEVEN L. D'ALESSANDRO, ESQ.
19       JAMES P. LOONAM, ESQ.
         SEAN T. HARAN, ESQ.
20  Assistant United States Attorneys
21
22  ATTORNEYS FOR DEFENDANT:
23  RICHARD WARE LEVITT, ESQ.
    148 E. 78th Street
24  New York, New York  10021
25
```

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

2

1  BOBBIE C. STERNHEIM, ESQ.
   45 West 21st Street, Suite 3C
2  New York, New York 10010

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22 Reporter:      LISA SCHMID, CCR, RMR
                 225 Cadman Plaza East Rm 354E
23               Brooklyn, New York  11201
                 Tel: (718) 613-2644  Fax: (718) 613-2379
24

25 Proceedings recorded by mechanical stenography, transcription by CAT.

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

1  THE CLERK: Okay. Criminal cause for jury selection,
2  in CR 04 706, the United States of America against Abubakr
3  Raheem.
4  Counsel, please state your appearances for the record.
5  MR. LOONAM: James Loonam, Sean Haran, Steve
6  D'Alessandro for the United States. At counsel table with us
7  is Tony Salisbury from the Immigrations and Customs
8  enforcement. Good morning, Your Honor.
9  MS. STERNHEIM: Bobbi C. Sternheim and Richard Ware
10 Levitt, for Abubakr Raheem.
11 THE COURT: Good morning, all.
12 All right. First, I've got a motion for
13 reconsideration made by letter dated June tenth from the
14 government, regarding the Court's -- you may be seated. Thank
15 you -- regarding the Court's ruling yesterday, denying or
16 granting the -- I guess the defendant's Batson challenge with
17 respect to Juror Number 1.
18 And so I'll ask counsel for the defendant whether they
19 received a copy of the letter.
20 MR. LEVITT: We received it about 15 minutes ago,
21 Judge.
22 THE COURT: All right. I've read the letter. Did you
23 have a chance to read the letter?
24 MR. LEVITT: I did. I read the letter.
25 THE COURT: Are you prepared to make a response to the

4

1  letter?

2  MR. LEVITT: Well, I think that this is an issue that
3  should be addressed, frankly, before Judge Trager. I know in
4  order to make a motion for reconsideration, it is necessary to
5  bring to the Court's attention something which it should have
6  considered pursuant to the government's arguments, but did not
7  -- or some kind of new law.

8  And really, all the government is saying is, we want
9  to make these arguments again, and now we have done some
10 research, so we want to rely on a case, United States versus
11 Brown, where the Court -- the Second Circuit simply said it was
12 not an abuse of discretion to find that the government's
13 challenge to a particular juror was not pretextual under
14 certain facts which are much different than these facts.

15 I mean, there, you had a juror who demonstrably was
16 actively involved in a church. He was going to meetings
17 several times a year or some such thing. There was no rebuttal
18 by the defense to that argument made by the prosecutor.

19 There were two arguments made by the prosecutor. The
20 defense attorney had grounds -- only rebutted one. It didn't
21 even address the second one, with respect to the level of
22 religious participation, which was something that the Second
23 Circuit pointed out, and obviously relied upon in finding there
24 was no abuse of discretion.

25 That's completely different than this case. First,

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

1  there is nothing here that suggests that same level of
2  involvement by Juror Number 1. Number two, it's something that
3  we absolutely did address. And number three, the other
4  distinctions that were made in Brown between that juror and
5  other jurors, and whether or not they exercised peremptory
6  challenges, those situations don't exist in this case. So it's
7  a completely different set of facts as to the abuse of
8  discretion standards, so it's just not the same case. It's not
9  the same facts. It's not even the same application of the law.
10         So most respectfully, I'd ask that the Court simply
11 adhere to its previous decision. The government has presented
12 absolutely nothing. They had every opportunity to ask the
13 Court to ask additional questions besides the one single
14 question that they wanted the Court to ask.
15         The juror answered all the questions satisfactory.
16 There's not a hint of suggestion that this juror is unable or
17 unwilling to follow the Court's instructions concerning how to
18 decide the case, and therefore, the Court should adhere to its
19 previous decision. If they want to appeal, then obviously,
20 that's their business.
21         THE COURT: Mr. Loonam?
22         MR. LOONAM: Yes, Your Honor.
23         It seems that the law was a little unclear when we
24 were going through each challenge in the back as to what role
25 religion could play in consideration, and it's hard to make

1   those decisions on the fly.  So the government's presenting
2   Your Honor with an opportunity to look at the law and consider
3   the facts that we presented, in light of that law now.
4          And we have -- we did ask for further questions on the
5   religious issue.  We had to deal with the information that we
6   were given at the time.
7          We had an agent who expressed a strong view that this
8   particular church, there may be issues with government
9   involvement and government conflict, not only with the David
10  Koresh issue, but this agent, his reasons were so strong
11  because he was based out of Kansas City, and served process on
12  the Adventist Church, the Seventh Day Adventist Church.  And
13  they didn't even recognize his authority.  They said, "Across
14  this line, this is not United States territory, once you cross
15  the line."
16         So the basis for this was legitimate, in light of the
17  case law.  And taken into account with all the other reasons
18  given with the information we had, this was a legitimate
19  challenge.  And so, the government moves for reconsideration.
20         But also, requests, you know, a finding that Your
21  Honor didn't find the pretext on the race challenge, that
22  this -- that we gave honest answers as to our reasons, which
23  were religious-oriented, in addition to disposition-oriented.
24  And it's our position that those reasons are legitimate
25  constitutional reasons.  The fact that it was -- the standard

1  of review doesn't affect whether it's a constitutional
2  challenge or not. If it was an unconstitutional challenge on
3  those reasons, no matter what the standard was, the Court would
4  have overruled the lower court. And so, the government is
5  moving for reconsideration, Your Honor.
6       THE COURT: All right. I've heard enough. Thank you.
7       The decision here is a little difficult for me,
8  because the government did ask me to pursue a line of
9  questioning which may have revealed more information that would
10 provide a proper basis for the challenge.
11      Let me start by saying that the motions for
12 reconsideration are indeed governed by the standard that the
13 Court is to grant them only if there is some controlling issue,
14 a controlling law that's brought to the Court's attention.
15      The Court was unaware of or if there is something --
16 some fact that the Court overlooked, then it was properly
17 presented -- that was presented to the Court, just overlooked
18 in its determination. So there are no controlling issues, no
19 controlling decisions of law here that are brought to my
20 attention. And the facts that were brought to my attention in
21 the letter were indeed facts argued, so I don't think there is
22 a proper basis for the motion.
23      The government has educated me now as to inquiries I
24 should have made or should have permitted, because the
25 distinction that I understand in the cases with respect to

1  challenges based on religion is -- or at least the cases cited
2  by the Court -- is that you may not discriminate in jury
3  selection on the basis of religious affiliation, but you may
4  discriminate or the basis of religious belief.
5      I don't think we have a record here about whether
6  Ms. Fordice's beliefs would prevent her from being a fair and
7  impartial juror.  We do know she is a Seventh Day Adventist.
8  This is a simply a religious affiliation.  And as a
9  consequence, because I did not go further -- even though the
10 government did ask about that -- I we don't know whether her
11 religious belief, whether it's simply a religious belief or
12 religious affiliation -- let me -- that's not phrased right.
13     We don't know whether she has a religious belief that
14 would prevent her from serving.  She certainly answered all the
15 questions about her service to indicate otherwise.
16     So had the government -- and I don't fault the
17 government for this -- but had the government made a stronger
18 case for pushing for questions about this area during the
19 questioning process, and had brought to my attention the issues
20 and framed them in the way that they are now framed in this
21 letter, I would reconsider my ruling about whether to pursue
22 the questions, but we're past that now.
23     And while I'm reluctant to -- well, the government
24 certainly makes a powerful argument now, that the decision is
25 not a pretext for -- I mean, the challenge is not -- was not

1  based on their pretext for racial discrimination. I'm not sure
2  it gets past the religious discrimination problem that we have
3  now or -- that is posed by this set of issues.
4      So, it's fair ground for appeal, but I am -- at this
5  point, am not -- I don't think that I have a basis to
6  reconsider the ruling, the proper basis to reconsider the
7  ruling, so I'll adhere to it.
8      And of course, you have a fair ground for appeal, and
9  it not an abuse of discretion standard. I think this is
10 something that's de novo review, so --
11     MR. LOONAM: (Nods head affirmatively.)
12     THE COURT: We don't have Judge Trager's clerk, so I
13 don't know when those issues are going to be raised.
14     Have you heard anything about that, counsel --
15     MR. LEVITT: No, Your Honor.
16     THE COURT: -- about the appeals?
17     MR. LOONAM: No, Your Honor.
18     THE COURT: All right. Here is the way I think that
19 we'll proceeded today, and I'm certainly happy to hear from you
20 about any thoughts you have. We, at this moment, we have 16
21 jurors who are qualified or, you know, that were selected,
22 subject to the challenges, and we have to pick four alternate
23 jurors.
24     I think that what we'll do is go through the process I
25 anticipate at the outset, that is, seat eight, and ask all the

1  questions that we would ask of jurors in order to qualify them
2  for cause, but then not go through the strikes because
3  depending on how Judge Trager rules on the objections or the
4  Batson challenges. It may be that people will be reseated,
5  which will free up some of the 16 who are now part of the
6  initial 16 chosen to be replacement jurors. And they would be
7  the original four replacement jurors -- if you follow what I'm
8  saying. In other words, they should be a part of the panel, it
9  seems to me, to be part of the replacement jurors.
10         Now, Judge Trager's clerk is on his way, I'm told.
11         So it struck me that those persons, you know, should
12 be -- if any of the 16 who were not discharged yesterday
13 that -- let's put it that way -- are available for replacement
14 duty service, they rightly would be in the group to be
15 considered as part of the replacement panel. So, we'd -- but
16 that would mean that we'd have extras from the eight
17 additional.
18         Now, maybe I'm overcomplicating this, and I'll hear
19 you, but that seemed to me to be the most consistent with the
20 overall jury venire and the random selection of jurors that is
21 contemplated.
22         Did does everybody follow what I'm saying?
23         MR. LOONAM: Not exactly, Your Honor. But, actually
24 to clarify at least the numbers, I believe yesterday, defense
25 counsel said they were going to think about which of Your

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

Honor's holdings that were going to appeal, if any.  Then they would determine which of the jurors we hold as replacement jurors -- I guess replacement jurors.  So maybe we'll start there.

THE COURT:  Well, that's fair enough.  I take it you intend to appeal on Ms. Fordice?

MR. LOONAM:  Yes, Your Honor.

THE COURT:  All right.  So if you prevail, then -- and you prevail on the others, as well -- I'll find out from Mr. Levitt if he intends to appeal those others as well -- then we'll have -- Juror Number 28 would be seated, Mr. Rothwell, and then we would need all eight of the replacement jurors from whom to select.

Now, on the other hand, if you lose and Mr. Levitt wins on the other three, then we would have four potential replacement jurors who are part of the 16 who are here now.  If you -- because there would be a total of four strikes that you had which were disregarded, leaving four additional.  You follow the math?

MR. LOONAM:  Yes, Your Honor.

THE COURT:  So Mr. Levitt, so the government suggested that I determine, before we go too far in counting up -- in doing the math, whether and how many, if you do, intend to -- whether you intend the appeal and if so, how many you intend to ask Judge Trager to review?

1    MR. LEVITT:  To the extent the government appeals the
2    Court's ruling with respect to Juror Number 1, we will appeal
3    the Court's ruling with respect to Jurors Number 10, 11 and 17.
4        THE COURT:  Okay.  So that puts all of those four in
5    play.  Do you understand the process --
6        MR. LEVITT:  Yes.
7        THE COURT:  -- that I'm proposing?
8        MR. LEVITT:  As I understand it, we're going to
9    qualify the necessary number, so they're there if we need them.
10       THE COURT:  Right.  And then you exercise the
11   challenges against the eight lowest numbers -- let's call it
12   that -- who are available as replacements.
13       MR. LEVITT:  By the way, are we doing that now?
14       THE COURT:  No.  No.  We're waiting until Judge Trager
15   issues his rulings.  You get all the information you need once
16   he gives you the rulings, then we'll know and you'll know how
17   many -- I mean, you'll know who to strike from, put it that
18   way.  Does that make sense to you?
19       MR. LEVITT:  Sure.
20       MR. LOONAM:  Yes.  I think we need to ask about a
21   transcript in order to get this done today, otherwise, jurors
22   are going to be sticking around for an extended period.
23       THE COURT:  Well, we're not going -- they don't even
24   need to be here for you to make your decisions.  I'd like to
25   just get them questioned, get them out of here this morning.

```
 1          MR. LOONAM:  If it's a de novo review, Judge Trager
 2   may make an additional factual record.
 3          THE COURT:  Okay.  But is -- Judge Trager's clerk is
 4   here.  I can consult with him.
 5          Do you know how Judge Trager intends to proceed with
 6   respect to the appeal on the Batson issues?
 7          THE CLERK:  I haven't had a chance to talk to him
 8   since yesterday around four.  So he isn't even aware there's a
 9   Batson challenge on appeal.  I'll call him right now.
10          THE COURT:  So the issue that the government is
11   raising is whether Judge Trager would be -- whether there's a
12   possibility Judge Trager would, in order to decide the appeals,
13   seek a further factual record by inquiring of the jurors, I
14   presume?
15          MR. LOONAM:  That's correct, Your Honor.
16          THE COURT:  Ezra, why don't you call him?
17          But that, it seems to me -- I'd ask you to do that --
18   but it seems to me it only would apply to the four challenges.
19          MR. LOONAM:  That's correct.
20          THE COURT:  So we don't need to keep the rest of them
21   around.
22          MR. LOONAM:  Indeed.  I think it would probably just
23   apply to the government's -- to Juror Number 1, on this
24   religious --
25          THE COURT:  I don't know.  A further factual record,
```

1  too?  I don't know -- or you may seek it, I don't know.  To the
2  extent that de novo review means that Judge Trager has the -- I
3  hate to say right -- but it's available to him to conduct
4  further factual inquiry.  He could decide to conduct a factual
5  inquiry as to all four.  So we'll find out.
6          But in the meantime -- in the meantime, I think we
7  ought to just go ahead and seat eight.  As to the others --
8              (Discussion off the record.)
9          THE COURT:  Go back on the record.  We're all right.
10 We're going to go get the rest of the venire, as well as the
11 people who are selected yesterday.
12         This is what I propose.  We're just going to tell the
13 16 who are left yesterday with numbers, we're going to conduct
14 them to the jury room and let them fill out the necessary
15 forms.
16         And it strikes me that we can release all but the four
17 -- but then it sort of suggests to me that that's going to
18 focus attention on those four, and they're going to wonder why
19 they're the ones that have to stick around.
20         MR. D'ALESSANDRO:  Judge, maybe what we can do is
21 while they're in the back filling out the form, it will give us
22 time to hear back from Judge Trager.
23         THE COURT:  Yes.  I agree.  So for the time being,
24 we'll wait and see what Judge Trager has to say about that
25 issue.

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

1          But in the mean time, I'm not going to ask them to sit
2   here while we go through the rest of the jury selection.  They
3   can just retire to the jury room.
4          MS. STERNHEIM:  Your Honor, is it your intention to
5   keep all of them?  Because I'm concerned that they're going to
6   be singled out, the four.  They're the only African Americans
7   on the panel.
8          THE COURT:  That's what I was saying.  We're not going
9   to discharge anybody right now.  I'm not going to send anybody
10  away right now.  And if there's an additional factual record to
11  be made, it's going to be readily apparent who is asked
12  questions of.
13         MS. STERNHEIM:  I understand.
14         THE COURT:  So, I mean, we'll cross that bridge when
15  we come to it, but it's something that we need to be aware of,
16  and I appreciate that.
17         Okay.  Are there any other issues, by the way, to
18  address before we go further this morning?
19         MR. D'ALESSANDRO:  Judge, something to keep in the
20  back of our mind.  I don't want to be in a situation like this
21  tomorrow, since we're scheduled for opening statements.
22         It seems to me if we move for cause, and we have our
23  eight, then we go through or peremptories, and then if they are
24  excused before we have this articulated record there may be
25  further Batson challenges.  We're going to have to call them

1  back.  So I would -- I wouldn't excuse the eight until we have
2  had the appeal through with Judge Trager, because at that
3  point, we're going to be doing the peremptories.  I maybe
4  articulating something the Court already had in mind.
5        THE COURT:  I didn't, but I think I understand what
6  you're saying, and we'll see what -- we'll see how -- what we
7  need to do.
8        MR. D'ALESSANDRO:  Thank you.
9        THE COURT:  It may be that Judge Trager won't have the
10 opportunity to deal with any of this until tomorrow, in which
11 case we can let everybody go, and they would come back tomorrow
12 and this will be item number one on the menu tomorrow.
13       (Recess.)